CASE 28—PETITION ORDINARY—TRANSFERRED TO EQUITY
—MARCH 11.

## Reynolds  v.  White,  &c.

APPEAL FROM CLAY CIRCUIT COURT.

MORTGAGE—LONG CONTINUED POSSESSION OF MORTGAGEES—PRESUMPTION.—Where mortgagees took possession of the mortgaged land, and without objection from the mortgagor, who lived in the immediate neighborhood of the land, claimed and exercised acts of ownership over it until their death, many years after the date of the mortgage, and their heirs were permitted, without objection or protest from the mortgagor, to divide the land among themselves twenty-nine years after the date of the mortgage, the mortgagor must be presumed to have parted with his title.

Reynolds v. White, &c.

A. W. BAKER AND JAMES M. SEBASTIAN FOR APPELLANT.

Long continued possession by the mortgagees and their heirs has deprived the mortgagor of the right to redeem, and vested those claiming under the mortgagees with a perfect title. (Gen. Stats., chap. 71, secs. 1, 16; 4 Bibb, 426; 1 Mar., 5; *Idem*, 452; 2 Dana, 29; 9 B. M., 83; 11 B. M., 98; 1 Duv., 384; 1 Dana, 60; 2 Dana 25; 3 Dana, 132; Gen. Stats., chap. 11, sec. 2; 18 B. M., 784; 2 Mar., 70; 6 Dana, 420; *Idem*, 426; 7 Dana, 165; 9 Dana, 391; 1 B. M., 46; *Idem*, 153; 2 B. M., 437; 4 B. M., 605; 7 B. M., 239; 13 B. M., 443; 18 B. M., 241; 3 Met., 37; 4 Dana, 479; 4 Bush, 631; 80 Ky, 101; 81 Ky., 391; 13 Am. Dec., 136; 85 Ky., 155; 8 Ky. Law Rep., 125; 2 S. W. Rep., 774; 7 Am. St. Rep., 579; Freeman on Cotenancy, 221, 224; 2 Bl. Comm., 179.)

JOHN L. SCOTT ON SAME SIDE.

Cited: Pogue v. McKee, 3 Mar., 127; Hudgen v. Temple, 12 B. M., 201; Bellmore v. Caldwell, 2 Bibb, 76; Railroad Co. v. Kidd, 7 Dana, 247; Holderman v. Middleton, 6 Bush, 45; Hail v. Reid, 15 B. M., 490.

B. P. WHITE AND J. C. WHITE FOR APPELLEES.

1. The heirs of the patentee, Alexander White, are necessary parties to a complete determination of the questions involved in this action. (Civil Code, sections 18, 22, 23, 24.)

2. Any possession that C., J. and D. White may have had of the six hundred acres of land was not adverse to Alexander White's interest or title.

3. The sale of the thirty-six acres in controversy by H. L. White, executor, and the purchase of same by appellant, was champertous and void, as L. A. Byron was at the time in the adverse possession of the land.

JOHN W. AND HARRY G. RODMAN ON SAME SIDE.

Cited: Gen. Stats., chap. 11, art. 3, sec. 2; Kinsolving v. Pierce, 18 B. M., 784; Speed v. Buford, 3 Bibb, 74; Neely v. Butler, 10 B. M., 50; Carrine v. Westerfield, 3 Mar., 331; J. M. & I. R. Co. v. Esterlee, 13 Bush, 667.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In 1834 a patent for six hundred acres of land was issued to Alexander White and Messenger Lewis, and in 1835 the latter sold and conveyed his undivided half thereof to C., J. & D. White, three brothers and co-partners.

In 1852 Alexander White, being indebted to them a large sum of money, mortgaged all his landed estate, including his undivided half in said six hundred acres, to C., J. & D. White, retaining, however, possession of his home place.

In 1875, C., J. & D. White all being dead, the heirs at law of D. White instituted an action against the heirs and devisees of C. White and J. White for a partition of all the lands owned by the firm of three brothers. In the list of lands alleged to belong to C., J. & D. White and subject to partition between their respective heirs and devisees, was the tract of six hundred acres patented to Alexander White and Messenger Lewis. And it was stated in the petition that Alexander White had conveyed his undivided half of that tract to C., J. & D. White before they died, but that the deed had been lost. However, by the judgment rendered in that action the tract of six hundred acres was, in fact, partitioned, and one hundred acres of it besides other tracts was allotted by the commissioners appointed by court, to the heirs and devisees of J. or James White, and a deed made to them therefor in 1881.

In 1883 H. L. White, executor of the will of James White, and empowered thereby to do so, sold and conveyed to appellant Reynolds, all the land that had, in the action mentioned, been allotted to the heirs and devisees of J. or James White, including the parcel of one hundred acres that had been taken off the tract of six hundred acres, and for description and identification of the land so sold and conveyed to Reynolds, reference was made to deed of

the commissioner to James White's heirs and devisees. The land in controversy in this action is a parcel of thirty-six acres inside the boundary of the original six hundred-acre tract, and also within boundary of the one hundred acres taken therefrom and allotted to said heirs and devisees. And the cause of this action, which was at first placed on the ordinary docket, is alleged trespass by the defendants, B. P. White and J. C. White, in cutting and carrying timber away from the thirty-six acres. It is proper here to state that neither of the defendants claim the land as heirs at law of any one of the three brothers, C., J. & D. White, though defendant, B. P. White, is the husband of one of the heirs, and was a party to the action instituted in 1875 for division of the lands.

In their answer they state that prior to his death, though subsequent to death of the other two members of the firm of C., J. & D. White, D. or Dougherty White caused executions to issue on judgment or judgments in favor of the firm against Alexander White, and to be levied on various tracts of land owned by him; that after the executions were levied, he, Dougherty White, made an agreement with one L. A. Byron, by which the latter, upon bidding and paying four hundred dollars for certain parcels of the land, one of which was the thirty-six acres in controversy, was to have made to him by D. White, the surviving member of the firm of C., J. & D. White, a complete title to the land thus bid for and purchased by him; and thus claiming the parcel of thirty-six acres, L. A. Byron, they allege in the answer, in 1889

conveyed it to defendants, B. P. White and J. C. White. But there is not filed in this record, nor accounted for, a copy of either the judgment or execution against Alexander White, nor the original or copy of either a deed to L. A. Byron or the one from him to the defendants. In fact it is not shown, nor attempted to be shown by any but oral testimony, that is both incompetent and vague, that there ever was such judgment, execution or sale, and L. A. Byron stands without a vestige of paper title to the thirty-six acres. Nor does claim of title by possession avail him; for no survey was made, even if he had paper title, by which to show the parcel of thirty-six acres is included in the boundary of land sold by the sheriff, if he, in fact, ever made any such sale. On the other hand, the plaintiff traces his title to an undivided half of the parcel of thirty-six acres by regular and connected chain to the Commonwealth, and possession and claim of absolute title to the whole from 1883, when the executor of J. White sold and conveyed to him.

It is, however, alleged, and attempted to be shown, that in 1889, about the time they state L. A. Byron sold and conveyed to defendants, the plaintiff disclaimed ownership of the parcel of thirty-six acres, and that the defendants were thereby misled and induced to purchase. But we think that allegation is not sustained by the proof; for, according to the statements of witnesses, L. A. Byron sold and conveyed to defendants in 1889 several tracts of land, including the parcel of thirty-six acres, but refused to warrant the title to that parcel, thus showing the

parties to that deed knew of the title and claim of the plaintiff, Reynolds. The parcel of thirty-six acres seems to be on opposite side of a dividing ridge from the residue of the tract of one hundred acres, and Reynolds admits he did not, in 1889, certainly know whether it was included in the deed made to him in 1883, but insisted upon claiming all within his boundary. The testimony and report of the surveyor in this case place it beyond doubt that the parcel of thirty six acres is inside the boundary of the six hundred acres, and was allotted to the heirs of James White, whose executor conveyed to Reynolds. Indeed, it is impliedly admitted by the defendants that the parcel of thirty-six acres was conveyed by commissioners to James White's heirs; for they allege in their answer a mistake was made by the commissioners in running the lines so as to include it, and ask the deed be reformed, which, of course, can not now be done.

This action having been transferred to equity upon motion of defendants, it certainly was competent for the chancellor, and as we believe his duty, to have adjudged the plaintiff, Reynolds, entitled to at least one-half the land in dispute, and consequently to one-half the value of the timber cut and carried away by defendants.

The real and only question in this case is, whether the plaintiff is owner of all the land in dispute. He is, if Alexander White was divested of title to his original undivided half of the six hundred acre tract at the time the division took place in 1881.

There is no evidence the mortgage executed by

Alexander White in 1852 was ever enforced, nor does it appear he ever paid any part of the mortgage debt. On the contrary the evidence in this case satisfactorily shows he never was able to do so. There is evidence tending to show that C., J. & D. White took possession of the six hundred acres not long after the mortgage of 1852, and held, claimed and exercised acts of ownership over it till they died. And nothwithstanding Alexander White was living in the immediate neighborhood of the six hundred acre tract in 1881, he permitted the heirs at law of C., J. & D. White, the mortgagees, without objection or protest, to obtain judgment for division and allotment of the six hundred acre tract among themselves, and thereafter to possess, claim and sell the different parts of it. It seems to us that after the lapse of twenty-nine years from the date of the mortgage in 1852, to the division among the heirs at law of C., J. & D. White in 1881 without setting up any claim himself, or objecting to the claim, possession and acts of absolute ownership by C., J. & D. White while they lived, and of their heirs at law afterwards, which finally culminated in a division and allotment of it, that Alexander White must be presumed to have parted with his title, especially when it is satisfactorily shown he was fully aware of the condition of affairs, and yet, during that long period, never asserted or exercised any acts of ownership of the land, or claimed to have paid any part of the mortgage debt.

If, then, the heirs at law of C., J. & D. White had, when the division took place in 1881, acquired title

to the entire tract of six hundred acres, whether paper or possessory, it was transmitted as to one hundred acres thereof, including the thirty-six acres in dispute, unimpaired to the plaintiff Reynolds. And that they had so acquired it in virtue of twenty-nine years of continued and undisputed possession and claim of ownership, we think the evidence conclusively shows. For there is no other way to account for the conduct of the mortgagees and creditors in failing to enforce their lien, and to seek collection of the mortgage debt, and of the conduct of the mortgagor and debtor in acquiesing in their possession and claim of the land for twenty-nine years, without any assertion of title or claim to the land, or any pretense he had paid or ever attempted to pay any part of the debt.

Wherefore the judgment is reversed, and cause remanded for judgment in favor of plaintiff for the land and inquiry as to damages he is entitled to by reason of the trespass complained of.